## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WALTER RAUDONIS, as trustee for the
WALTER J. RAUDONIS 2016
REVOCABLE TRUST, DAVID HOLLAND
and JEREMY DAVIS, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

JOHN JARVE, JOHN BUTTRICK, NIKOS
BONATSOS and TYLER SOSIN,

      Defendants.

Civil Action No.

## CLASS ACTION COMPLAINT

Plaintiffs Walter Raudonis, as trustee for the Walter J. Raudonis 2016 Revocable Trust,

David Holland and Jeremy Davis ("Plaintiffs") by and through their attorneys, individually and on

behalf of all others similarly situated, file this Class Action Complaint against Defendants John

Jarve ("Jarve"), John Buttrick ("Buttrick"), Niko Bonatsos ("Bonatsos") and Tyler Sosin ("Sosin")

(collectively, "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1.      This is a class action arising from Defendants' roles as directors of RealtyShares,

Inc. ("RealtyShares") and/or its subsidiary RS Lending, Inc. ("RS Lending"). Plaintiffs allege that

Defendants are liable as control persons of RealtyShares and/or RS Lending under Section 20(a)

of the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* (the "Exchange Act"), as well as

liable as directors and control persons under California's Blue Sky Law, Cal. Corp. Code § 25504,

in connection with RealtyShares and RS Lending's offering of securities in violation of the Exchange Act and Cal. Corp. Code § 25401.[1]

2.      RealtyShares and RS Lending offered and sold securities to investors such as Plaintiffs and the Classes (defined below) through an online investment platform for real estate crowdfunding services. Among the investments they offered and sold to Plaintiffs and Class members in or around late 2017 and early 2018 were debt securities related to millions of dollars' worth of loans for property acquisition and construction of several restaurant franchises and urgent care facilities at various locations across the United States. <u>The sponsor and effective borrower for these loans was Franchise Growth, LLC ("Franchise Growth").</u>

3.      In the offering documents for these investments, RealtyShares and RS Lending represented they had conducted due diligence on Franchise Growth, that Franchise Growth had a "reported track record" and "extensive experience" in the franchising business and that it anticipated the development of more than 400 units in 13 states within the next three years. RealtyShares and RS Lending also represented that the loans were structured to protect investors insofar as the proceeds were to be disbursed in a series of installments, spread over time so that the loan-to-cost ratio would at all times be kept within acceptable parameters.

4.      These material representations in the offering documents by RealtyShares and RS Lending were untrue. The reality was RealtyShares and RS Lending had done no effective due diligence to substantiate Franchise Growth's "track record" or "extensive experience." In fact, RealtyShares and RS Lending missed or ignored a number of material facts that would have

---

[1] The present class action is related to another class action pending in this Court, *Raudonis et al. v. RealtyShares, Inc. et al.*, Civil Action No. 1:20-cv-10107-PBS, which Plaintiffs filed against defendants RealtyShares, Inc., RS Lending, Inc., Navjot Athwal, Edward Forst and IIRR Management Services, LLC (the "RealtyShares Action"). The RealtyShares Action is currently stayed.

indicated Franchise Growth was not a sound sponsor or borrower, including without limitation pending litigation against it for failure to pay legal bills and a prior bankruptcy and a multimillion-dollar contract judgment against one of its principals, Mr. Bruce Arinaga. In addition, contrary to their representations in the offering documents, RealtyShares and RS Lending allowed Franchise Growth to deplete the loan proceeds quickly, rapidly reducing the loan-to-cost ratios beyond what RealtyShares and RS Lending had promised investors.

5.     In March 2019 and in the months thereafter, RealtyShares began advising investors that Franchise Growth was defaulting on the loans, that construction on the projects had ceased or had never even started and that the loan funds were substantially depleted.

6.     In or around May 2019, IIRR Management Services, LLC ("IIRR" or "IRM") purchased assets from RealtyShares and its subsidiaries, acquired the RealtyShares platform and agreed to manage the remaining investments and investors on the platform. Soon thereafter, IIRR advised investors in the Franchise Growth-related securities that they should expect to incur substantial losses.

7.     As detailed herein, RealtyShares and RS Lending, in soliciting investors in the Franchise Growth-related securities, knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. That caused Plaintiffs and Class members substantial losses. Realty Share and RS Lending also offered Franchise Growth-related securities originating from California by means of written communications that included untrue statements of material fact and/or omitted to state material facts necessary to make the statements, in light of

the circumstances under which they were made, not misleading in violation of Cal. Corp. Code § 25401, subjecting them to liability under Cal. Corp. Code § 25501.

8.      Defendants, who were directors of RealtyShares and/or RS Lending responsible for the companies' overall business operations and strategy, are liable as control persons of RealtyShares and RS Lending under Section 20(a) of the Exchange Act, as well as under Cal. Corp. Code § 25504.

9.      By reason of the foregoing violations, Plaintiffs and Class members are entitled to recover from Defendants damages for their losses on the Franchise Growth Investments under the Exchange Act. In addition, Plaintiffs and Class members are entitled to recover from Defendants the consideration paid for the securities, plus interest, less any income received on the securities, under Cal. Corp. Code § 25501.

## PARTIES

10.     Plaintiff Walter Raudonis, who brings this action as trustee of the Walter J. Raudonis 2016 Revocable Trust, is a resident of Holliston, Massachusetts. In or around May 2018, he purchased $100,000 worth of debt securities related to a Franchise Growth-sponsored loan for property acquisition and construction of a Church's Chicken restaurant to be located at 2735 Calumet Trace, Owensboro, Kentucky. Plaintiff Raudonis's purchases are reflected in the attached certification.

11.     Plaintiff David Holland is a resident of Atlanta, Georgia. In or around August 2017, he purchased $10,000 worth of debt securities related to a Franchise Growth-sponsored loan for the acquisition of a parcel of land located at 1709 Midland Trail, Shelbyville, Kentucky, on which a Captain D's restaurant was to be constructed. In or around September 2017, he also purchased $10,000 worth of debt securities related to a Franchise Growth-sponsored loan for the

acquisition and construction of a building to be turned into a Church's Chicken franchise at 2015 North Wickham Road, Melbourne, Florida. In or around October 2017, he further purchased $10,000 worth of debt securities related to a Franchise Growth-sponsored loan for the acquisition and retrofit of an existing building to be turned into an American Family Care urgent care facility located at 125 Sunrise Highway in West Islip, New York. Plaintiff Holland's purchases are reflected in his certification the attached certification.

12.     Plaintiff Jeremy Davis is a resident of Scotland. In or around May 2018, he purchased $20,000 worth of debt securities related to a Franchise Growth-sponsored loan for property acquisition and construction of a Church's Chicken restaurant to be located at 2735 Calumet Trace, Owensboro, Kentucky. He also purchased $20,000 worth of debt securities related to a Franchise Growth-sponsored loan for property acquisition and construction of a Church's Chicken restaurant to be located at 4684 Patterson Avenue, Winston-Salem, North Carolina. Plaintiff Davis's purchases are reflected in the attached certification.

13.     Defendant Jarve is a California resident and served as a director of RealtyShares in 2016 and 2017 and served as a director of RS Lending in 2017. He is a partner emeritus and was a principal at Menlo Ventures in the San Francisco area, which served as the lead investor in multiple venture capital funded companies with successful initial public offerings and which achieved billion-dollar valuations. Menlo Ventures invested millions of dollars in RealtyShares in 2014 and 2016.

14.     Defendant Buttrick is a New York resident and served as a director of RealtyShares from 2016 to 2019 and served as a director of RS Lending in 2017. He is a partner and principal at Union Square Ventures, a venture capital firm based in New York. Union Square Ventures invested millions of dollars in RealtyShares in 2016.

15.     Defendant Bonatsos is a California resident and on information and belief served as a director of RealtyShares during the relevant period. He is a managing director and principal at General Catalyst, a venture capital firm in San Francisco with approximately $5 billion in total capital raised. General Catalyst invested millions of dollars in RealtyShares in 2014. All of the allegations herein relating to Defendant Bonatsos are made on information and belief.

16.     Defendant Sosin is a California resident and on information and belief served as a director of RealtyShares during the relevant period. He is a partner and principal at Menlo Ventures, which invested millions of dollars in RealtyShares in 2014 and 2016. All of the allegations herein relating to Defendant Sosin are made on information and belief.

## RELEVANT NON-PARTIES

17.     RealtyShares is a Delaware corporation with its principal place of business in San Francisco, California. RealtyShares owned and operated an online investment platform for real estate crowd funding services, www.realtyshares.com (the "RealtyShares Platform"). The RealtyShares Platform enabled investors to purchase shares in private real estate investments, provided investors access to a range of real estate investment options and allowed users to browse, view, finalize, and manage real estate investments online. As described further below, RealtyShares worked together with its subsidiary RS Lending to offer and sell the debt securities at issue here, and the two entities were joint venturers in that regard. In or around November 2018, RealtyShares ceased adding new investors and offerings to the RealtyShares Platform due to its inability to secure additional capital.

18.     RS Lending is a Delaware corporation with its principal place of business in San Francisco, California. RS Lending is a wholly owned subsidiary of RealtyShares and worked together with RealtyShares to offer and sell the debt securities at issue here. RealtyShares and RS

Lending were joint venturers in that regard. RS Lending served as the issuer of the securities, offering and selling to investors such as Plaintiff certain promissory notes made by RS Lending that were dependent for payment on payments that RS Lending received on specific corresponding borrower loans relating to real estate. These securities were offered through the RealtyShares Platform owned and operated by RS Lending's parent company, RealtyShares.

19.     IIRR is a Delaware corporation with its principal place of business in San Francisco, California. In or around May 2019, IIRR purchased certain assets from RealtyShares and its subsidiaries, acquired the RealtyShares Platform and contracted with RealtyShares to manage the remaining investments and investors on the RealtyShares Platform. IIRR claims to have salvaged $1.5 billion in assets from RealtyShares and RS Lending. IIRR is a joint venture formed through a partnership between RREAF Holdings LLC, a real estate sponsor and developer based in Texas, and iintoo Investments, a global real estate investment platform based in New York.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

21.     Venue is proper in Massachusetts pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

22.     In connection with the acts alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone and email communications.

## FACTUAL ALLEGATIONS

### *The Rise and Fall of RealtyShares*

23.     RealtyShares began operations in or around 2013. It owned and operated an online investment platform for real estate crowdfunding services, the RealtyShares Platform. Like any real estate crowdfunding platform, the idea was to allow multiple investors to pool their money together to invest in properties and projects larger than they could afford or manage on their own. The RealtyShares Platform allowed institutional and accredited investors to become equity or debt holders in corresponding real estate opportunities. The platform also provided a virtual space for companies, called "sponsors," that needed financing for their real estate projects to find investors who would purchase securities relating to those projects. RealtyShares offered different types of properties for investors to choose from, including commercial, retail, residential and mixed-use, in various geographical areas, with varying target returns. Minimum investments were as low as $5,000.

24.     In order to use the platform, a prospective investor would sign up online for a RealtyShares account. Once registered, the prospective investor could browse available investments. When a prospective investor found an investment of interest, he or she could access a page with information on that property – information about the property itself, the financials, the property management and other financial and legal documents.

25.     In its marketing materials, RealtyShares represented it had already done all of the due diligence an investor would normally have to do themselves. RealtyShares also touted the purported fact that it had performed background checks on the key executives involved in the company handling each project.

26.     Once an investor selected and made an investment, his or her funds would be pooled with other investors and the investment would be closed. Each project had an overall

funding goal that had to be met before individual investors could invest. Once that goal was satisfied, investors would finalize their investments by electronically signing and sending documentation relating to the investment to RealtyShares, along with transferring the funds, all of which they could do through the RealtyShares Platform. Investors could then track their investments and earnings and manage documents relating to their investments on a custom dashboard on the RealtyShares Platform.

27.     RealtyShares and its subsidiary RS Lending charged fees associated with the investments they offered, including both equity investments and debt investments. For debt investments such as those at issue here, RealtyShares and RS Lending charged a servicing fee based on the spread between the interest rate the borrower was paying and the rate being paid to investors. On projects for which RealtyShares and RS Lending raised funding, they took a 2.5– 3% origination fee on the money they raised for their projects.

28.     RealtyShares' marketing materials represented that the investments it offered were thoroughly vetted. According to RealtyShares' web site, less than 10% of all applications received approval for financing because it engaged in "a rigorous and data-driven process that includes sponsor evaluation, asset evaluation, underwriting, investment structuring, and approvals."[2] In the words of the company: "The important thing to remember is that RealtyShares does a substantial amount of due diligence for every investment we offer." RealtyShares averred that applicants were prequalified based on their past track record, financial strength and expertise. RealtyShares also claimed to do due diligence by reviewing the investment strategy, financial and legal standing of the applicant, as well as the location and condition of the property.

---

[2] The present complaint references and quotes from the RealtyShares website as it existed prior to the filing of the RealtyShares Action.

29.     The debt investments that RealtyShares offered essentially used investors' money as an indirect loan to the company handling the project. Investors were supposed to earn money on the interest charged. Often investor funds were used to fix and flip residential property. The loans usually had a twelve-month term and were typically secured by a mortgage or deed of trust. Investors were supposed to receive a percentage return on the money they invested and the principal investment would be returned after the term of the loan.

30.     Between 2013 and 2018, more than a thousand investments, totaling more than $800 million dollars, were funded through the RealtyShares Platform.

31.     In or around November 2018, RealtyShares ceased adding new investors and offerings to the RealtyShares Platform due to an inability to secure additional capital.

32.     In or around May 2019, IIRR purchased certain assets from RealtyShares and its subsidiaries, acquired the RealtyShares Platform and contracted with RealtyShares to manage the remaining investments and investors on the RealtyShares Platform.

33.     In an interview with "crowdfundinsider.com" published on October 22, 2019, Jeff Holzmann, CEO of IIRR, indicated as follows when asked to provide "insight as to how RealtyShares got into trouble":[3]

> RealtyShares experienced rapid growth fueled by venture capital, which also resulted in pressure to show top-line growth. It appears that in the rush to grow, less emphasis was placed on professional underwriting, asset management and customer service. This lead to the funding of deals that would not be considered "professional grade," lax oversight as the number of investments grew into the thousands and inadequate customer service as the number of clients reached tens of thousands.

---

[3]https://www.crowdfundinsider.com/2019/10/153179-iirr-management-services-discusses-realtyshares-acquisition-vision-for-the-future-of-real-estate-crowdfunding/.

34.     In the same interview,[4] when asked how the real estate crowdfunding sector was evolving, Mr. Holzmann stated:

> What customers should be doing is judging by the facts, check for successful track records, professional underwriting and proper asset management.
>
> Unfortunately, we often hear from RealtyShares customers today that they chose RealtyShares based on their ads, and now regret not going to more professional outfit like iintoo or investing with a sponsor like RREAF directly.

### RealtyShares Touted a "Stringent, Five-Step Vetting Process" for Investments

35.     Before its downfall, RealtyShares represented that it went to "considerable lengths to protect investors by evaluating, underwriting and structuring their investments." As set forth in the marketing materials on its web site: "Since each opportunity is unique, a certain level of due diligence is key to assessing the risks associated with a particular property." According to RealtyShares: "Evaluating these opportunities, also known as "underwriting", requires an in-depth investigation during which our experienced team takes precise measures to ensure that the investment opportunity is properly vetted and meets our rigorous standards."

36.     RealtyShares promised investors that it took the following five steps "before a deal ever makes it to the platform":

---

[4] *Id.*

**1  SPONSOR EVALUATION**
We believe that sponsor quality is a leading indicator of a worthy investment opportunity.

**2  ASSET EVALUATION**
We believe that attractive risk-adjusted returens can be found in value-add, middle market opportunities.

**3  UNDERWRITING**
We believe in proper risk analysis, through the intelligent application of data and industry expertise.

**4  TRANSACTION NEGOTIATION**
We believe in protecting our investors & mitigating risk through favorable deal terms.

**5  APPROVALS**
We believe in taking compliance seriously, soliciting internal and external approval at every step

37.     With respect to the first step, sponsor evaluation, RealtyShares represented that "sponsor quality is a leading indicator of a worthy investment opportunity. A sponsor's prior experience and track record are critical in deciding whether the project meets our standards for listing on the platform. A sponsor must pass this first step of diligence in order for us to further consider their project." In particular, RealtyShares promised that "[w]hen deciding whether or not to work with a sponsor, we first look for a track record of successful real estate investments, especially projects that bear a strong resemblance to the one under consideration."

38.     RealtyShares represented to investors that it evaluated sponsors in three ways. First, RealtyShares purportedly checked the sponsor's track record by making sure the sponsor had executed a minimum of $10,000,000 in transactions in the last three years or had a minimum

of $20 million in assets under management. Second, RealtyShares claimed it assessed the sponsor's familiarity with the region in which they were doing their project. Finally, Realty Shares promised investors it performed background and credit checks on the sponsors: "The principles [sic] of the sponsor company must submit references and participate in background and credit checks designed to uncover past foreclosure issues, court judgments and personal credit problems, as well as any concerning police records or securities violations."

39.    RealtyShares also represented it vetted all the investments it offered in a variety of other ways, including asset evaluation, underwriting – in which RealtyShares developed its "own financial models" using its "superior data," negotiating the transaction to protect investors and mitigate risk and obtaining compliance approval. RealtyShares indicated it "prioritize[d]… the safety of investments from potential downside" and would "[d]evelop and/or collect applicable transaction documentation," including "third party reports, title, entity information, operating agreement, loan documents… and escrow arrangements."

40.    RealtyShares' supposed Herculean efforts to vet investments stood at the heart of its marketing strategy. RealtyShares attempted to differentiate itself from competitors by trumpeting its due diligence on investments: "When it comes to investing, you've got a lot of options. But I believe that, thanks to our experienced team of industry experts and our stringent underwriting standards, RealtyShares has the ability to offer investments of exceptional quality."

### RealtyShares and RS Lending Offer and Sell Debt Securities Relating to Loans to Franchise Growth for Property Acquisition and Construction

41.    In or around late 2017 and early 2018, RealtyShares and RS Lending offered and sold to investors debt securities, in the form of borrower dependent promissory notes, related to millions of dollars' worth of loans for the acquisition and construction of various properties, involving a single sponsor, Franchise Growth (the "Franchise Growth Investments"). In

connection with each investment, Franchise Growth would acquire property and build new franchise locations, including fast food restaurants and urgent health care centers. For each deal, Franchise Growth would form a borrower entity which would hold title to the property and function as the borrower on the loan.

42.   The Franchise Growth Investments related to at least the following locations:

(a)   American Family Care: 125 Sunrise Highway, West Islip, NY

(b)   American Family Care: W. 8040 Ulmerton Road, Largo FL

(c)   Captain D's: Midland Trail, Shelbyville, KY

(d)   Captain D's: Cherry Road, Rock Hill, SC

(e)   Church's Chicken: 1601 N. Woodland Blvd, Deland, FL

(f)   Church's Chicken: 81 St., Westminster, CO

(g)   Church's Chicken: 845 S. Orange Blossom Trail, Apopka, FL

(h)   Church's Chicken: 2015 N. Wickham Road, Melbourne, FL

(i)   Church's Chicken: 2735 Calumet Trace, Owensboro, KY

(j)   Church's Chicken: 4684 Patterson Ave., Winston Salem, NC

(k)   Dog Haus: 14400 Pardee Rd., Taylor, MI

(l)   Dog Haus: 4405 Rte. 36E, Decatur, IL

(m)   Nashville Checkers and Taco John's in Antioch, TN.

43.   On information and belief, the terms of the loans for each of the Franchise Growth Investments were substantially similar, with interest rates of approximately 10%, initial maturity dates of 12 months and loan amounts ranging from approximately $1.5 million to approximately $4 million. According to the terms of the notes, RS Lending was only obligated to make payment

14

if and to the extent that RS Lending received payment on the corresponding borrower loan relating to each property. The corresponding borrower loans were secured by liens on the properties.

44.     On information and belief, the offering documents for each of the Franchise Growth Investments were substantially similar. For each investment, RealtyShares and RS Lending provided investors with a "Property Information Package" via the RealtyShares Platform, which purported to be the operative offering materials to be reviewed and considered by investors with respect to each offering. The Property Information package for each Franchise Growth Investment included: (a) offering-specific information on the RealtyShares Platform; (b) the form of note for each investment; (c) a private placement memorandum; (d) a "series note listing"; and (e) a subscription agreement. The Subscription Agreements for the Franchise Growth Investments provided that the Subscriber's purchase of the notes was subject to the terms and conditions of the Subscription Agreement and the other portions of the Property Information Package.

45.     The representations made in the Property Information Packages were made by both RealtyShares and its subsidiary RS Lending, both of which were prominently listed and featured in the various documents comprising the Packages, and which were working together as joint venturers to offer and sell the securities at issue.

46.     The offering-specific information on the RealtyShares Platform for each Franchise Growth Investment included a "Summary of Terms." On information and belief, in the "Investment Overview" section of the Summary of Terms for each of the Franchise Growth Investments, RealtyShares and RS Lending represented as follows:

> The sponsor, Franchise Growth, LLC (the "Sponsor"), has a reported track record [and/or "extensive experience"] in restaurant franchising and anticipates the development of 400+ units in 13 states in the next 3 years.

47.     Similarly, on information and belief, in the "Management" section of the Summary of Terms for each of the Franchise Growth Investments, RealtyShares represented that Mr. For Li, a partner of Franchise Growth, formed the company in 2016 "to develop more than 400 franchise business[es] in 13 U.S. States."

48.     On information and belief, in the private placement memoranda for each of the Franchise Growth Investments, in the section entitled "Lending Standards and Policies," Realty Shares and RS Lending promised that their "lending process" included "conducting due diligence." As an example, in the private placement memoranda for the loans relating to the Church's Chicken restaurants to be located at 2735 Calumet Trace, Owensboro, Kentucky (the "Owensboro Church's Chicken"), 2015 North Wickham Road, Melbourne, Florida (the "Coastal Florida Church's Chicken") and 4684 Patterson Avenue, Winston-Salem, North Carolina (the "Winston-Salem Church's Chicken"), the Captain D's restaurant to be located at 1709 Midland Trail, Shelbyville, Kentucky (the "Louisville Captain D's") and the American Family Care urgent care facility located at 125 Sunrise Highway in West Islip, New York (the "Long Island American Family Care"), for which Plaintiffs Raudonis, Holland and/or Davis purchased debt securities, RealtyShares and RS Lending represented as follows:

> *Conduct of Due Diligence*. RealtyShares examines the borrower and the subject property, along with local market conditions, comparable property analyses and many other factors that may affect the performance of the borrower loan. If RealtyShares does not have previous experience with the borrower, RealtyShares will perform background and credit checks on the borrower's principals. Material past and current legal issues are investigated as well as reported issues that the principals of the borrower may have had with financial institutions, contractors and governmental authorities. RealtyShares also reviews the borrower's experience level, track record and general approach to commercial real estate investments. To the extent available, RealtyShares reviews the borrower's portfolio of past investments. RealtyShares also attempts to determine whether the borrower has extensive and good working relationships with financial institutions, brokers and other professionals.

RealtyShares reviews the underlying property and makes reasonable efforts to confirm that the current and expected post-renovation fair market value of the property is in line with comparable properties. RealtyShares may rely on valuations from other sources, such as the recent sales price of the property or comparable properties, and/or an opinion of value from a real estate broker knowledgeable in the area where the Property is located, in connection with such efforts. Renovation budgets generally are expected not to exceed a certain portion of a property's purchase price (because higher amounts can indicate a greater level of risk); however, each situation is evaluated individually. If the age of the property is not within the general range of competing properties, there may be marginally increased risk.

Other due diligence matters that RealtyShares may consider include an evaluation of overall risks and mitigating factors, market conditions, local employment conditions, submarket property values, the strength of a borrower, and other relevant loan-specific issues.[5]

49.     On information and belief, in the "Investment Highlights" section of the Summary of Terms included with the offering-specific information for each Franchise Growth Investment on the RealtyShares Platform, RealtyShares and RS Lending emphasized that the "Loan Structure Potentially Reduces Risk." By way of example, in the Summary of Terms for the loans relating to the Owensboro and Winston-Salem Church's Chickens and the Long Island American Family Care, RealtyShares and RS Lending represented as follows:

The loan from RS Lending will be disbursed in installments, over six different drawdowns, spread over time so that the loan-to-cost ratio is kept at approximately 78%. The Sponsor is to therefore have a minimum approx. 22% equity exposure throughout the term of the loan. In addition, a nine-month interest reserve is being established in order to ensure the receipt of interest payments ….[6]

---

[5]  *E.g.*, Private Placement Memoranda for the Franchise Growth Investments involving the Owensboro Church's Chicken, the Coastal Florida Church's Chicken, the Winston-Salem Church's Chicken, the Louisville Captain D's and the Long Island American Family Care at 45, 46.

[6]  *E.g.*, Summary of Terms on RealtyShares Platform for the Franchise Growth Investments involving the Owensboro and Winston-Salem Church's Chickens and Long Island American Family Care.

50.     Consistent with the foregoing, also on information and belief, in the private placement memoranda for each of the Franchise Growth Investments, in the section entitled "Certain Aspects of the Loans; Advances; Construction Reserves," Realty Shares and RS Lending indicated that loan funds would be disbursed only as portions of the construction were completed. For example, in the foregoing section of the private placement memoranda for the Owensboro, Coastal Florida and Winston-Salem Church's Chicken, Long Island American Family Care and Louisville Captain D's Investments, RealtyShares and RS Lending represented as follows:

> *Construction Reserves*. A portion of the principal amount of many borrower loans will relate to funds financed for a borrower's renovation or construction efforts on a subject property. The loan underwriting for such principal amounts is typically based upon a determined "after repair" value, i.e., the projected value of the property *after* the completion of the construction or renovation work.
>
> Although a series of Notes relating to a corresponding borrower loan involving construction financing will generally be fully funded at the closing of such series, the portion of such loan corresponding to such construction amounts will typically be disbursed by the Company or its service provider only as portions of the construction work are completed. In most cases, the Company will require the borrower to have already completed certain line items within the scope of work before the borrower will be entitled to receive any of the construction reserve amounts. The Company may retain third-party service providers to monitor such progress and to advise the Company as to the percentage of work completed and the appropriate amount of disbursements of such reserved amounts….[7]

51.     Similarly, in the "Lending Process Generally" section of the private placement memoranda for the Owensboro, Coastal Florida and Winston-Salem Church's Chicken, Long Island Family Care and Louisville Captain D's Investments, which on information and belief is the same or substantially similar for the other Franchise Growth Investments, RealtyShares and RS Lending represented:

---

[7] *E.g.*, Private Placement Memoranda for the Franchise Growth Investments involving the Owensboro, Coastal Florida and Winston-Salem Church's Chickens, Long Island Family Care and Louisville Captain D's at 21, 22.

*Negotiating and Structuring Transactions.* A borrower loan will be governed by a promissory note, a security instrument such as a deed of trust or a mortgage, generally a guaranty from a principal of the borrower (sometimes a full payment guaranty, but sometimes a guaranty limited to certain "bad acts" of the borrower), along with certain ancillary loan documents. RealtyShares considers how the legal structure might contribute to the overall risks of the borrower loan, and attempts to negotiate an agreement that will provide the Company with a reasonably acceptable loan structure as pertains to its legal rights with respect to the borrower. *In many cases, RealtyShares structures a borrower loan so that a "holdback" reserve is established from part of the total loan amount; this reserve (if applicable) would generally be designed to be "drawn down" as the renovation work anticipated for the property is completed.*[8]

52.     Upon receipt of the foregoing offering materials, Plaintiffs Raudonis, Holland and Davis and members of the Franchise Growth Class (defined below) purchased debt securities in each of the Franchise Growth Investments in or around late 2017 or early 2018.

**RealtyShares and RS Lending Offer and Sell Debt Securities Relating to a Loan for Property Acquisition and Construction of the Louisville Captain D's**

53.     In or around August 2017, Plaintiff Holland purchased a 2017A Unsecured Non-Recourse Borrower Dependent Promissory Note issued by RS Lending in the amount of $10,000, Series (Loan) Number RSL.2017A.32, relating to the property at 1709 Midland Trail, Shelbyville, Kentucky, with an interest rate of 9.5%, a loan start date of August 23, 2017 and an expected maturity date of April 23, 2018, eight months from the loan date (the "Louisville Captain D's Investment"). This was one of the Franchise Growth Investments. The total loan amount was $1,802,000, but it was conducted in two "tranches"; Plaintiff Holland invested in "Tranche 2." The minimum investment amount was $7,000. According to the terms of the Note, RS Lending was only obligated to make payment on the Note if and to the extent that RS Lending received payment on the corresponding borrower loan relating to the property.

_____

[8] *E.g.*, Private Placement Memoranda for the Franchise Growth Investments involving the Owensboro, Coastal Florida and Winston-Salem Church's Chickens, Long Island Family Care and Louisville Captain D's at 45-46, 47 (emphasis added).

54.     Also in or around August 2017, the other members of the Louisville Captain D's Subclass (defined below) purchased notes relating to the Louisville Captain D's Investment.

55.     Plaintiff Holland and the Louisville Captain D's Subclass purchased such notes upon RealtyShares and RS Lending providing them with a Subscription Agreement and other contents of a "Property Information Package" via the RealtyShares Platform, which contained the representations discussed above.

### *RealtyShares and RS Lending Offer and Sell Debt Securities Relating to a Loan for Property Acquisition and Construction of the Coastal Florida Church's Chicken*

56.     In or around September 2017, Plaintiff Holland purchased a 2017A Unsecured Non-Recourse Borrower Dependent Promissory Note issued by RS Lending in the amount of $10,000, Series (Loan) Number RSL.2017A.38, relating to the property at 2015 N. Wickham Rd., Melbourne, Florida, with an interest rate of 9.5%, a loan start date of September 29, 2017 and an expected maturity date of July 29, 2018, ten months from the loan date (the "Coastal Florida Church's Chicken Investment"). This was one of the Franchise Growth Investments. The total loan amount was $2,086,000. The minimum investment amount was $5,000. According to the terms of the Note, RS Lending was only obligated to make payment on the Note if and to the extent that RS Lending received payment on the corresponding borrower loan relating to the property.

57.     Also in or around September 2017, the other members of the Coastal Florida Church's Chicken Subclass (defined below) purchased notes relating to the Coastal Florida Church's Chicken Investment.

58.     Plaintiff Holland and the Coastal Florida Church's Chicken Subclass purchased such notes upon RealtyShares and RS Lending providing them with a Subscription Agreement

and other contents of a "Property Information Package" via the RealtyShares Platform, which contained the representations discussed above.

### *RealtyShares and RS Lending Offer and Sell Debt Securities Relating to a Loan for Property Acquisition and Construction of the Long Island American Family Care*

59.     In or around October 2017, Plaintiff Holland purchased a 2017A Unsecured Non-Recourse Borrower Dependent Promissory Note issued by RS Lending in the amount of $10,000, Series (Loan) Number RSL.2017A.109, relating to the property at 125 Sunrise Highway in West Islip, New York, with an interest rate of 9.5%, a loan start date of October 16, 2017 and an expected maturity date of August 16, 2018, ten months from the loan date (the "Long Island American Family Care Investment"). This was one of the Franchise Growth Investments. The total loan amount was $2,665,000, but it was conducted in three "tranches"; Plaintiff Holland invested in "Tranche 1." The minimum investment amount was $5,000. According to the terms of the Note, RS Lending was only obligated to make payment on the Note if and to the extent that RS Lending received payment on the corresponding borrower loan relating to the property.

60.     Also in or around October 2017, the other members of the Long Island American Family Care Subclass (defined below) purchased notes relating to the Long Island American Family Care Investment.

61.     Plaintiff Holland and the Long Island American Family Care Subclass purchased such notes upon RealtyShares and RS Lending providing them with a Subscription Agreement and other contents of a "Property Information Package" via the RealtyShares Platform, which contained the representations discussed above.

### *RealtyShares and RS Lending Offer and Sell Debt Securities Relating to a Loan for Property Acquisition and Construction of the Winston-Salem Church's Chicken*

62.     In or around the spring of 2018, Plaintiff Davis purchased a 2017A Unsecured Non-Recourse Borrower Dependent Promissory Note issued by RS Lending in the amount of

$20,000, Series (Loan) Number RSL.2017A.161, relating to the property at 4684 Patterson Avenue, Winston-Salem, North Carolina, with an interest rate of 9.5%, a loan start date of April 20, 2018 and an expected maturity date of April 20, 2019, twelve months from the loan date (the "Winston-Salem Church's Chicken Investment"). This was one of the Franchise Growth Investments. The total loan amount was $1,745,000, but it was conducted in two "tranches"; Plaintiff Davis invested in "Tranche 2." The minimum investment amount was $5,000. According to the terms of the Note, RS Lending was only obligated to make payment on the Note if and to the extent that RS Lending Received payment on the corresponding borrower loan relating to the property.

63.    Also in or around the spring of 2018, the other members of the Winston-Salem Church's Chicken Subclass (defined below) purchased notes relating to the Winston-Salem Church's Chicken Investment.

64.    Plaintiff Davis and the Winston-Salem Church's Chicken Subclass purchased such notes upon RealtyShares and RS Lending providing them with a Subscription Agreement and other contents of a "Property Information Package" via the RealtyShares Platform, which contained the representations discussed above.

### *RealtyShares and RS Lending Offer and Sell Debt Securities Relating to a Loan for Property Acquisition and Construction of the Owensboro Church's Chicken*

65.    In or around the spring of 2018, Plaintiff Raudonis, through the Walter J. Raudonis 2016 Revocable Trust, purchased a 2017A Unsecured Non-Recourse Borrower Dependent Promissory Note issued by RS Lending in the amount of $100,000, Series (Loan) Number RSL.2017A.162, and Plaintiff Davis purchased the same type of note in the amount of $20,000, relating to the property at 2735 Calumet Trace, Owensboro, KY 4230, with an interest rate of 9.5%, a loan start date of May 2, 2018 and an expected maturity date of May 2, 2019, twelve

months from the loan date (the "Owensboro Church's Chicken Investment"). This was one of the Franchise Growth Investments. The total loan amount was $1,650,000, but it was conducted in two "tranches"; Plaintiffs Raudonis and Davis invested in "Tranche 1." The minimum investment amount was $5,000. According to the terms of the Note, RS Lending was only obligated to make payment on the Note if and to the extent that RS Lending Received payment on the corresponding borrower loan relating to the property.

66.     Also in or around the spring of 2018, the other members of the Owensboro Church's Chicken Subclass (defined below) purchased notes relating to the Owensboro Church's Chicken Investment.

67.     Plaintiffs Raudonis and Davis and the Owensboro Church's Chicken Subclass purchased such notes upon RealtyShares and RS Lending providing them with a Subscription Agreement and other contents of a "Property Information Package" via the RealtyShares Platform, which contained the representations discussed above.

**Plaintiffs and Class Members' Franchise Growth Investments Unravel, and RealtyShares and RS Lending's Misrepresentations are Revealed**

68.     Directly contrary to their promises in the offering documents, RealtyShares and RS Lending had failed to conduct adequate due diligence on the sponsor Franchise Growth. Had they conducted any meaningful due diligence, they would have discovered that there was virtually no public information available suggesting that Franchise Growth had any "track record" in the franchising business. And what public information there was revealed a number of troubling material facts that RealtyShares and RS Lending ignored or failed to uncover or disclose to investors.

69.     For example, in December 2017, a company called New Republic National Fidelity LLC had sued Franchise Growth in Florida state court to recover over $100,000 in unpaid legal bills.

70.     Even more disturbingly, one of the few pieces on the Internet discussing Franchise Growth, a news wire dated May 2, 2017 and entitled "Franchise Growth: An Integrated Turnkey Solution for the Franchisee Industry,"[9] revealed that an individual named Bruce Arinaga was one of the principals of Franchise Growth. Had RealtyShares and RS Lending conducted a modicum of due diligence, they would have learned that Mr. Arinaga had arrived at Franchise Growth with a checkered past. Mr. Arinaga had filed for bankruptcy in Maryland in 2012. The original voluntary petition for bankruptcy reflected that among Mr. Arinaga's "liabilities" were creditors holding unsecured nonpriority claims against him amounting to over ***$31,000,000***, including a guaranty on a real estate development loan of over ***$10,000,000***. In addition, Mr. Arianga had a $2.75 million contract judgment against him in a case brought in state court in Cook County, Illinois by creditor Everest Real Estate Fund.

71.     In addition, a simple Google search of Mr. Arinaga would have revealed a news article disclosing an *additional bankruptcy* involving *another company* affiliated with Mr. Arinaga.[10] In 2008, a real estate developer called RTM Framingham LLC went into bankruptcy in Boston after a creditor filed an involuntary petition with the U.S. Bankruptcy Court in Boston claiming it was owed thousands of dollars under a contract. RTM Framingham LLC was part of

---

[9]     https://staging.icrowdnewswire.com/2017/05/01/franchise-growth-llc-an-integrated-turnkey-solution-for-the-franchise-industry/.

[10]    https://www.wbjournal.com/article/framingham-development-slowed-due-to-bankruptcy-virginia-based-developer-owes-450000-in.

RTM Capital, a principal of which was Mr. Arinaga. The article further revealed that RTM Framingham, LLC owed the Town of Framingham between $400,000 and $500,000 in back taxes.

72.     RealtyShares and RS Lending's failure to uncover or disclose these concerning material facts demonstrates their complete failure to conduct due diligence of the sponsor Franchise Growth, in direct violation of their representations that they would do so. They either learned of these material facts and intentionally failed to disclose them or recklessly failed to uncover them in the first place. The fact that RealtyShares and RS Lending did uncover and disclose similar material facts to investors on other deals on the RealtyShares platform, including prior judgments and bankruptcies involving other sponsors, but not on the Franchise Growth deals, suggests that RealtyShares and RS Lending acted with scienter with respect to their failure to disclose the troubling material facts relating to Franchise Growth. Indeed, RealtyShares and RS Lending each knew or recklessly disregarded the material facts relating to Franchise Growth but failed to disclose them to investors.

73.     In or around March 2019, Franchise Growth and its affiliated borrowers began defaulting on the loans. At that time, RealtyShares started to advise investors that serious problems with Franchise Growth and its projects had begun to emerge, reflecting that RealtyShares and RS Lending had failed to conduct adequate due diligence. For example, RealtyShares provided the following update regarding the Owensboro Church's Chicken Investment on its on-line Platform in March 2019:

> The borrower has informed us that the project is on hold because the franchisor has stripped territory from the franchise tenant. The borrower is pursuing a ground lease with another Franchisee. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan.

74.     Around the same time, RealtyShares began posting updates regarding similar problems with the other Franchise Growth Investments. For example, in or around March 2019,

RealtyShares advised investors in securities relating to the Church's Chicken in Westminster, Colorado that the sponsor/borrower was in default and they were seeking a negotiated settlement with Franchise Growth instead of foreclosing. Also in March 2019, RealtyShares posted the following regarding the Westminster Church's Chicken investment:

> The borrower has informed us that the construction of the property is on hold because construction estimates are far higher than proforma. The borrower is looking at alternatives. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan. We will be conducting independent research to determine the current value of the property. RealtyShares will update you after this research is completed and if we receive relevant information from the borrower.

75.     At the same time, RealtyShares posted an identical message regarding the Winston-Salem Church's Chicken.

76.     Similarly, RealtyShares posted the following message regarding the Captain D's in Shelbyville, Kentucky and the Coastal Florida Church's Chicken in or around March 2019:

> The borrower has informed us that the completion of the property has been delayed because the borrower has insufficient funds to complete construction. The borrower informs us that he has been attempting to raise additional equity to enable the completion of the construction. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan. We will be conducting independent research to determine the current value of the property. We will update you after this research is completed and if we receive relevant information from the borrower.

77.     At the same time, RealtyShares posted the following message regarding the American Family Care in West Islip, New York:

> The borrower has informed us that the tenant is now 4 months in arrears on rent payments and is attempting to negotiate a reduction in rent. We will update you if we receive further information on the outcome of these negotiations. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan. We will be conducting independent research to determine the current value of the property. We will update you after this research is completed and if we receive relevant information from the borrower.

78.     The Franchise Growth Investments continued to unravel, confirming RealtyShares and RS Lending's failure to conduct the due diligence they had promised. For example, in April 2019, RealtyShares issued the following update on the Platform with respect to the Owensboro Church's Chicken Investment:

> The borrower reports that the tenant's franchise agreement has been terminated. According to the borrower, construction has not begun and the project terminated. The search for a new operator is underway. We are obtaining current financial statements from the franchisee and are hiring an appraiser to determine the "as-is" value of the property. Once the due diligence is complete, we will be in a better position to negotiate [a] loan sale or if negotiations fail, foreclose. RealtyShares will update you when we have additional relevant information to share.

79.     Also in April 2019, RealtyShares issued the following identical update on several of the Franchise Growth Investments, including at least the Church's Chickens in Apopka, Florida, Westminster, Colorado and Winston-Salem, North Carolina; the Captain D's in Kentucky; the Dog Haus in Decatur, Illinois; and the American Family Cares in Florida and Long Island, New York:

> The discussions with the borrower regarding bringing in outside investors to buy this loan have moved forward and we are working to complete our due diligence, including determining a final value for a buy-out. We will give this process 30-days to finalize transaction terms. We will begin to foreclose if, after 30-days, we believe we are not close to a deal. RealtyShares will update you when we have additional relevant information to share.

On information and belief, RealtyShares provided the same or similar updates regarding the other Franchise Growth Investments in or around April 2019.

80.     As events continued to unfold via updates from RealtyShares in late April and into May 2019, it became clear that on many of the projects (including the Owensboro and Winston-Salem Church's Chickens), in direct violation of the representations they had made in the offering documents, RealtyShares and RS Lending had disbursed significant portions of the loans, even though permitting was not complete and construction on the projects had never even begun. That

caused the loan-to-cost ratio to be far lower than represented by RealtyShares and RS Lending. For several of the projects, RealtyShares admitted that the costs to complete construction would substantially exceed budget such that additional capital would be required to complete the projects.

81.     As noted, IIRR took over the asset management duties of RealtyShares. In June 2019, IIRR provided the following update regarding the Franchise Growth Investments, including the Owensboro, Coastal Florida and Winston-Salem Church's Chickens, the Louisville Captain D's and the Long Island American Family Care Investments:

> IRM has researched the investment status and has received an updated appraisal of the property. IRM is in the process of analyzing the appraisal; however, the preliminary finding indicates that your investment will incur a substantial loss.
>
> After our analysis is complete, hopefully within two weeks, IRM will be in a position to provide an estimate of the potential loss.

Also in June 2019, IIRR provided the same or substantially similar updates regarding other Franchise Growth Investments, including at least the Church's Chicken in Colorado and the American Family Care in Florida.

82.     In subsequent e-mail communications with investors regarding at least one of these investments in June 2019, the Church's Chicken in Colorado, IIRR admitted as follows: "We have reasons to believe that the sponsor did not execute well on the original business plan, and as such, we now estimate that potential, partial or complete, losses are possible in this portfolio."

83.     On July 2, 2019, IIRR e-mailed investors in the Franchise Growth Investments as follows:

> As you may know, several deals in the Franchise Growth portfolio are not performing according to the original plans, and IRM is expecting losses in these investments…
>
> We have arranged an hour long Webinar with Mr. Bruce Arinaga and Mr. For Li of Franchise Growth. LLC, they will present the deal chronology, their analysis of

the situation, and their version of events. They have also agreed to answer selected questions from the audience….

84.     In the webinar, the representatives from Franchise Growth, Messrs. For Li and Bruce Arinaga, confirmed that Franchise Growth had no real experience or expertise with construction development projects by admitting that they essentially outsourced all activities relating to the construction of these projects to another developer, American Development Projects ("ADP"). Franchise Growth then blamed ADP for all of the problems on all of the projects, claiming in essence that ADP had stolen approximately $7,000,000 in loan proceeds on the properties but did not use the funds for construction. Even assuming that the representatives from Franchise Growth were being truthful, the webinar made clear that Defendants failed to conduct adequate due diligence on Franchise Growth, insofar as Franchise Growth admitted that it had failed to conduct adequate due diligence of ADP, inappropriately delegated essential functions on the projects to ADP, failed to install safeguards in the disbursement process and failed to monitor the projects.

85.     In the last half of 2019, IIRR periodically updated investors regarding on-going discussions with Franchise Growth. In early January 2020, IIRR emailed investors advising them that it had executed a forbearance agreement with Franchise Growth and affiliated entities. IIRR represented that under the forbearance agreement, it would refrain from proceedings to foreclose on the secured assets in exchange for Franchise Growth's promise to repay investors the capital they originally invested. IIRR cautioned, however, that: "It is important to remember that while Franchise Growth agreed to these terms, their ability to pay is dependent on a successful raise of additional capital from new sources. If this process is unsuccessful, IRM intends to move quickly to foreclose on all assets and sell them at FMV (fair market value), in the best interest of

investors." This was consistent with a previous e-mail that IIRR had sent to investors describing the potential deal on September 2, 2019.

86.     In May 2020, IIRR granted Franchise Growth an extension of the forbearance agreement to give Franchise Growth additional time "execute a sale of the portfolio and return capital to investors. IIRR extended the forbearance agreement again for another 30 days at the end of July 2020. At the end of August 2020, IIRR notified investors that Franchise Growth's efforts to sell the portfolio had failed and that the forbearance agreement would not be extended further. IIRR then notified investors of the possibility that it would either begin foreclosure proceedings or engage in a "deed-in-lieu" process, although more recently has suggested the possibility of a buyer "acquiring the notes directly from investors."

87.     Contrary to their representations in the offering documents, RealtyShares and RS Lending failed to conduct due diligence on Franchise Growth, failed to confirm its reported "track record" in the development of real estate projects and failed to disburse loan funds in installments as construction proceeded so as to keep the loan-to-cost ratio within acceptable parameters and protect investors. These misrepresentations and other misconduct described above violated the Exchange Act and the California Blue Sky Law.

### *Defendants are Control Persons of RealtyShares and RS Lending*

88.     As directors of RealtyShares and/or RS Lending, by reason of their high-level positions, Defendants were controlling persons of RealtyShares and RS Lending and had the power and influence, and exercised the same, to cause RealtyShares and RS Lending to engage in some or all of the conduct complained of herein. Defendants were directors of RealtyShares and/or RS Lending because they were appointed to the board(s) as representatives of their respective private equity firms which had invested millions of dollars in RealtyShares, and hence

they had power and control over RealtyShares and/or RS Lending, both as directors and as representatives of major shareholders.

## CLASS ACTION ALLEGATIONS

89.     Plaintiffs Raudonis, Davis and Holland bring this action on their own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of:

> All persons or entities who purchased debt securities offered or sold by RealtyShares or RS Lending relating to loans to Franchise Growth and/or associated entities for property acquisition and construction.

The foregoing class is the Franchise Growth Class.

90.     Plaintiff Holland also brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Franchise Growth and/or associated entities for property acquisition and construction of a Captain D's restaurant to be located at 1709 Midland Trail, Shelbyville, Kentucky.

The foregoing class is the Louisville Captain D's Subclass.

91.     Plaintiff Holland also brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Franchise Growth and/or associated entities for property acquisition and construction of a Church's Chicken restaurant to be located 2015 North Wickham Road, Melbourne, Florida.

The foregoing class is the Coastal Florida Church's Chicken Subclass.

92.     Plaintiff Holland also brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Franchise Growth and/or associated entities for property acquisition and construction of an American Family Care urgent care facility located at 125 Sunrise Highway in West Islip, New York.

The foregoing class is the Long Island American Family Care Subclass.

93.     Plaintiff Davis also brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Franchise Growth and/or associated entities for property acquisition and construction of a Church's Chicken restaurant to be located at 4684 Patterson Avenue, Winston-Salem, North Carolina.

The foregoing class is the Winston-Salem Church's Chicken Subclass.

94.     Plaintiffs Raudonis and Davis also bring this action on their own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Franchise Growth and/or associated entities for property acquisition and construction of a Church's Chicken restaurant to be located at 2735 Calumet Trace, Owensboro, Kentucky.

The foregoing class is the Owensboro Church's Chicken Subclass.

95.     The Franchise Growth Class, the Louisville Captain D's Subclass, the Coastal Florida Church's Chicken Subclass, the Long Island American Family Care Subclass, the Owensboro Church's Chicken Subclass and the Winston-Salem Church's Chicken Subclass are sometimes collectively referred to as the "Classes."

96.     Excluded from the Classes are Defendants, as well as any affiliated companies, immediate family members of Defendants, or entities they control.

97.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

98.     Each Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, on information and belief there are in excess of 100 members of the Franchise Growth Class, and in excess of 20 members of each of the Louisville Captain D's

Subclass, the Coastal Florida Church's Chicken Subclass, the Long Island American Family Care Subclass, the Owensboro Church's Chicken Subclass and the Winston-Salem Church's Chicken Subclass.

99.     There are questions of law and fact which are common to the Classes and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether RealtyShares and RS Lending knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made to Plaintiffs and Class members in violation of Section 10(b) of the Exchange Act and Rule 10b-5;

(b)     whether RealtyShares and RS Lending offered or sold securities originating from California to Plaintiffs and Class members by means of written communications that included untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading in violation of Cal. Corp. Code §§ 25401 and 25501;

(c)     whether the members of the Class have sustained damages and, if so, the proper measure of damages;

(d)     whether Defendants are control persons of RealtyShares and RS Lending and jointly liable with RealtyShares and RS Lending for their violations of the Exchange Act under Section 20(a) of the Exchange Act; and

(e)     whether Defendants are liable under California's Blue Sky Law, Cal. Corp. Code § 25504.

100.    Plaintiffs' claims are typical of the claims of the other members of the Classes, and Plaintiffs do not have any interests adverse to the Classes.

101.    Plaintiffs are adequate representatives of the Classes, have retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Classes.

102.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for the party opposing the Classes.

103.    Plaintiffs anticipate that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

104.    Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## **COUNT I**

(For Liability Under Section 20(a) of the Exchange Act)

105.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.    As set forth above, RealtyShares and RS Lending are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC because they knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading. Specifically, among the other misrepresentations identified in detail in the paragraphs above, RealtyShares and RS Lending misrepresented that: (a) they had conducted due diligence on Franchise Growth and that it had a proven track record and extensive experience in franchising; and (b) that they would disburse loans to Franchise Growth in installments spread over time so that the loan to-cost-ratio would be kept at agreed upon parameters designed to protect investors. RealtyShares and RS Lending plainly knew that their representations that they had conducted due diligence were false insofar as they knew what due diligence they had or had not performed. IIRR is liable as successor to RealtyShares and RS Lending.

107.    Defendants controlled the operation and management of RealtyShares and RS Lending, and directed and oversaw their business affairs and investor communications. Because of their positions as directors of RealtyShares and as representatives of its major shareholders, and for the reasons alleged herein, Defendants knew of the dissemination of the aforementioned false and misleading statements alleged above.

108.    Defendants were "controlling persons" of RealtyShares and RS Lending within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in RealtyShares and RS Lending's unlawful conduct as described herein.

109.    By reason of the above conduct, Defendants are additionally liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RealtyShares and RS Lending.

110.    Accordingly, Plaintiffs are entitled to recover their damages from Defendants.

## COUNT II

(For Liability Under Section 25504 of the California Blue Sky Law)

111.    Plaintiffs repeat and reallege each allegation set forth herein.

112.     Section 25504 of the California Blue Sky Law provides, in relevant part, as follows:

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker–dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

113.     As set forth above, RealtyShares and RS Lending are liable under Section 25501 of the California Blue Sky Law because they offered and sold securities to Plaintiffs and Class members by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances in under which they were made, not misleading, and knew, or had reasonable grounds to believe in the existence of the facts by reason of which liability is alleged to exist.

114.     Defendants directly or indirectly, controlled RealtyShares and RS Lending, and served as directors thereof, or occupied a similar status or performed similar functions.

115.     Defendants knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which RealtyShares and RS Lending are liable under the California Blue Sky Law.

116.     By virtue of their positions as controlling persons and directors of RealtyShares and RS Lending, and as representatives of RealtyShares' major shareholders, and their conduct alleged herein, Defendants are jointly and severally liable to Plaintiffs and the Classes under the California Blue Sky Law.

117.     Accordingly, pursuant to the California Blue Sky Law, Plaintiffs and the Classes are entitled to recover from Defendants Jarve, Buttrick, Bonatsos and Sosin rescission in the form of the consideration paid for the securities, together with interest, less the amount of any income received on the securities and/or damages.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the other members of the Classes, request that the Court enter judgment against Defendants as follows:

A.     Declaring that this is a properly maintainable class action under Federal Rule of Civil Procedure 23 and declaring Plaintiffs to be proper Class representatives;

B.     Awarding Plaintiffs and members of the Classes damages for Defendants' violations of law;

C.     Awarding Plaintiffs and members of the Classes rescission in the form of the full recovery of the consideration paid for the securities at issue, together with interest, less the amount of any income received on the securities, for violations of the California Blue Sky Law;

D.     Holding Defendants jointly and severally liable with RealtyShares and RS Lending for their violations of the Exchange Act and the California Blue Sky Law;

E.     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated:  February 26, 2021                    By their attorneys:


                                             *Ian J. McLoughlin*
                                             Edward F. Haber (BBO #215620)
                                             Michelle Blauner (BBO #549049)
                                             Ian J. McLoughlin (BBO #647203)
                                             Adam M. Stewart (BBO #661090)
                                             Patrick J. Vallely (BBO #663866)
                                             Shapiro Haber & Urmy LLP
                                             2 Seaport Lane
                                             Boston, MA 02210
                                             Telephone: (617) 439-3939
                                             Facsimile: (617) 439-0134
                                             ehaber@shulaw.com
                                             mblauner@shulaw.com
                                             imcloughlin@shulaw.com
                                             astewart@shulaw.com
                                             pvallely@shulaw.com

                                             *Attorneys for Plaintiffs and the Classes*

<u>**Certification of Plaintiff**</u>
<u>**Pursuant to Federal Securities Laws**</u>

I, Walter Raudonis, as trustee for the Walter J. Raudonis 2016 Revocable Trust, declare under the pains and penalties of perjury as follows:

1. I have reviewed the complaint to be filed against John Jarve, John Buttrick, Nikos Bonatsos and Tyler Sosin and authorize its filing on my behalf, as trustee for the Walter J. Raudonis 2016 Revocable Trust.

2. I did not purchase the securities at issue in this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws or any other laws.

3. I, as trustee for the Walter J. Raudonis 2016 Revocable Trust, am willing to serve as a representative party on behalf of a class as set forth in the complaint, including providing testimony at deposition and trial.

4. The attached Schedule A lists all of my purchases and sales of the securities at issue in this action as specified in the complaint.

5. During the three-year period preceding the date on which this certification is signed, I filed a related class action to this one under the federal securities laws pending in this Court, *Raudonis et al. v. RealtyShares, Inc. et al.*, Civil Action No. 1:20-cv-10107-PBS, in which the Court appointed me as one of the lead plaintiffs. Other than that, I have not sought to serve as a representative party on behalf of a class under the federal securities laws during that period.

6. I will not accept any payment for serving as a representative party on behalf of the class as set forth in the complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

7. The matters set forth in this certification are true to the best of my current knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/25/21

Walter J Raudonis, Trustee

Walter Raudonis, as trustee for the
Walter J. Raudonis 2016 Revocable Trust

<u>**Schedule A**</u>

| Date | Series No. | Trans. | Price | Income | Principal Returned | Losses |
|------|-----------|--------|-------|--------|--------------------|--------|
| 5/2/18 | RSL.2017A.162 | Purchase | $100,000 | $7,098.62 | $37,764.96 | $55,136.42 |

<u>**Certification of Plaintiff Jeremy Davis**</u>
<u>**Pursuant to Federal Securities Laws**</u>

I, Jeremy Davis, declare under the pains and penalties of perjury as follows:

1.      I have reviewed the amended complaint to be filed against John Jarve, John Buttrick, Nikos Bonatsos and Tyler Sosin and authorize its filing on my behalf.

2.      I did not purchase the securities at issue in this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws or any other laws.

3.      I am willing to serve as a representative party on behalf of a class as set forth in the amended complaint, including providing testimony at deposition and trial.

4.      The attached Schedule A lists all of my purchases and sales of the securities at issue in this action as specified in the complaint.

5.      During the three-year period preceding the date on which this certification is signed, I filed a related class action to this one under the federal securities laws pending in this Court, *Raudonis et al. v. RealtyShares, Inc. et al.*, Civil Action No. 1:20-cv-10107-PBS, in which the Court appointed me as one of the lead plaintiffs. Other than that, I have not sought to serve as a representative party on behalf of a class under the federal securities laws during that period.

6.      I will not accept any payment for serving as a representative party on behalf of the class as set forth in the complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

7.      The matters set forth in this certification are true to the best of my current knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/26/21

_____
Jeremy Davis

**Certification of Plaintiff David Holland
Pursuant to Federal Securities Laws**

I, David Holland, declare under the pains and penalties of perjury as follows:

1. I have reviewed the amended complaint to be filed against John Jarve, John Buttrick, Nikos Bonatsos and Tyler Sosin and authorize its filing on my behalf.

2. I did not purchase the securities at issue in this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws or any other laws.

3. I am willing to serve as a representative party on behalf of a class as set forth in the amended complaint, including providing testimony at deposition and trial.

4. The attached Schedule A lists all of my purchases and sales of the securities at issue in this action as specified in the complaint.

5. During the three-year period preceding the date on which this certification is signed, I filed a related class action to this one under the federal securities laws pending in this Court, *Raudonis et al. v. RealtyShares, Inc. et al.*, Civil Action No. 1:20-cv-10107-PBS, in which the Court appointed me as one of the lead plaintiffs. Other than that, I have not sought to serve as a representative party on behalf of a class under the federal securities laws during that period.

6. I will not accept any payment for serving as a representative party on behalf of the class as set forth in the complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

7. The matters set forth in this certification are true to the best of my current knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   25 February 2021

David Holland

**Schedule A**

| Date | Series No. | Trans. | Price | Income | Principal Returned | Losses |
|------|-----------|--------|-------|--------|-------------------|--------|
| 8/23/17 | RSL.2017A.32 | Purchase | $10,000 | $976.43 | $0.00 | $9,023.57 |
| 9/29/17 | RSL.2017A.38 | Purchase | $10,000 | $1,098.22 | $176.57 | $8,725.21 |
| 10/16/17 | RSL.2017A.109 | Purchase | $10,000 | $899.90 | $0.00 | $9,100.10 |